**Jon M. Egan**, OSB 00246
Jegan@eganlegalteam.com
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
Telephone: (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **JOSEPH BRINKMANN**, both in his individual capacity and, in addition, as a collective action on behalf of others similarly situated,<br>　　　　　　　　Plaintiff,<br>vs.<br>**ABM ONSITE SERVICES - WEST, INC.**, a Delaware corporation,<br>　　　　　　　　Defendant. | Case Nos. 3:17-cv-00275-SI (Lead)<br>　　　　　3:17-cv-00478-SI (Consolidated Case)<br><br>**Joint Motion for Final<br>Class and Collective Settlement Approval** |

Counsel for the parties have conferred regarding the subject of this motion and have agreed to jointly submit this motion.

## MOTION

The parties to this action jointly move for an Order finally approving the settlement agreement as fair, reasonable, and adequate. This motion is supported by the Declarations of Jon M. Egan, David Hosenpud, and Les Chappell submitted herewith. Plaintiff and his counsel also submit contemporaneously herewith their motion for the award of attorney fees, costs, and service payment.

## MEMORANDUM

This memorandum will list the standards for final class settlement approval and then discuss the application to this case.

## STANDARDS

Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or

defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, to approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(3); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

The settlement must be considered as a whole, and although there are "strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure it is 'fair, adequate, and free from collusion.' " *Lane*, 696 F.3d at 818–19 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). There are a number of factors guiding this review, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* at 819. Courts within the Ninth Circuit "put a good deal of stock in the product of an arms-length [*sic*], non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Class action settlements involve "unique due process concerns for absent class members who are bound by the court's judgments." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (quotation marks and citation omitted). When the parties negotiate the settlement agreement before formal class certification, as in this case, the court should engage in "an even higher level of scrutiny

for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Id.* (quotation marks and citation omitted). This more "exacting review" is warranted "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819.

The Ninth Circuit has recognized, however, that "[j]udicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Thus, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

## DISCUSSION

### A. Notice to the Class

The Court granted preliminary approval to the parties' proposed notice procedure after the parties made certain amendments to the notice requested by the Court. *See* Dkt. 60. The settlement administrator carried out that procedure. Declaration of Les Chappell. Notice of the settlement was given to the settlement class by the best means practicable under the circumstances, including mailing the Notice to Class Members, and posting the Notice, Proof of Claim, settlement, and Preliminary Approval Order on a dedicated website.

The Notice provided Class Members with all required information including, among other things: (1) a summary of the Action and the claims asserted; (2) a clear definition

of the Settlement Class; (3) a description of the material terms of the settlement; (4) the fact that no affirmative action was needed to receive the benefit of class membership, but notice that Class Members could opt out of the Settlement Class, as well as notice of the claim/opt-in procedure for FLSA participation; (5) an explanation of Class Members' opt-out and claim/opt-in rights, the date by which Class Members must opt out or submit claims/opt-ins, and information about how to do so; (6) explaining the release of claims should Class Members choose to remain in the Settlement Class and/or make a claim/opt-in; (7) instructions about how to object to the settlement and the deadline for Class Members to submit any objections; (8) instructions about how to object to the requested attorney's fees, expenses, and service awards and the deadline for Class Members to submit any objections; (9) the date, time, and location of the final approval hearing; (10) the internet address for the settlement website and the telephone number from which Class Members could obtain more information on the settlement; (11) contact information for the settlement administrator and the Court; and (12) information about how Lead Counsel and the Class Representative would be compensated. The notice is sufficient. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (reaffirming that a class notice need only "generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

**B.  Final Certification of Rule 23 class**

To certify a settlement class, the requirements of Rule 23 of the Federal Rules of Civil Procedure must be satisfied. *See Hanlon*, 150 F.3d at 1019. Under Rule 23, the plaintiff "must be prepared to prove" that each of the requirements of the Rule is satisfied. *Wal-*

**Joint Motion for Final Class/Collective Settlement Approval**                Page 4

*Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23 sets forth more than a "mere pleading standard." *Id.* On the other hand, Rule 23 provides district courts with broader discretion to certify a class than to deny certification. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013).

A party seeking class certification must satisfy each of the requirements of Rule 23(a) and at least one requirement of Rule 23(b). *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Under Rule 23(a), a district court may certify a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In other words, a proposed class must meet the requirements of numerosity, commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). Rule 23 also requires, implicitly, that the members of the proposed class be ascertainable based on objective criteria. *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1064 (D. Or. 2014). Along with the five requirements of Rule 23(a), the party seeking to maintain a class action also must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

The Rule 23 analysis is "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351 (quotation marks omitted); *Comcast Corp.*, 569 U.S. at 33-34. This "rigorous" review applies even when certification is for settlement purposes only. *See, e.g., In re Hyundai*, 926 F.3d at 556. Still, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the

certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* A district court, however, "*must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original).

The parties agreed to certification of the class for settlement purposes, and the Court previously agreed that the class met the requisite factors in conditionally certifying the class for settlement purposes in the preliminary approval of the settlement. The Court, however, must now conduct a "rigorous" analysis of the factors.

### 1. Rule 23(a)

The requirements of FRCP 23(a) are met.

### a) Numerosity

In this district, there is a "rough rule of thumb" that 40 class members is sufficient to meet the numerosity requirement. *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *see also Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (same); 1 *McLaughlin on Class Actions* § 4:5 (15th ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement."). The claims administrator sent 1,555 Notice packets to potential Class Members, as identified through defendant's employment records. Declaration of Les Chappell at ¶ 11. This shows that the numerosity requirement is met.

### b) Commonality

To satisfy the commonality requirement, plaintiffs must show that the class

members suffered the "same injury"—that their claims depend upon a "common contention." *Wal-Mart*, 564 U.S. at 350 (quotation marks omitted). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Class members, however, need not have *every* issue in common: commonality requires only "a single significant question of law or fact" in common. *Mazza*, 666 F.3d at 589; *see also Wal-Mart*, 564 U.S. at 359. The Class Members have the significant issues of law and fact in common, including:

1. Whether deduction of Oregon Workers' Benefit Fund assessments for paid but non-worked hours (*e.g.*, holiday, sick, and vacation hours) violates Oregon law in one or more of the particulars alleged;
2. Whether the Class Members' overtime claims are viable given the parties' competing interpretations of certain overtime statutes and regulations;
3. Whether the time for which Class Members were not compensated was for *de minimis* work;
4. Whether ABM has other legally viable defenses to the application of wage and hour laws; and
5. Whether ABM's actions were willful.

Thus, the commonality requirement is satisfied.

### c) Typicality

To meet the typicality requirement, plaintiffs must show that the named parties' claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Under the "permissive standards" of Rule 23(a)(3), the "representative's claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976

**Joint Motion for Final Class/Collective Settlement Approval**          Page 7

F.2d 497, 508 (9th Cir. 1992). To determine whether claims and defenses are typical, courts look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id*. (quotation marks omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The lead plaintiff's claims are based on the same conduct as the claims of the Settlement Class, and all Class Members have the same or similar injury. Thus, lead plaintiff presents claims that are typical of the claims held by each Class Member.

### d) Adequacy

Rule 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." This requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. The adequacy requirement is based on principles of constitutional due process; accordingly, a court cannot bind absent class members if class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940); *Hanlon*, 150 F.3d at 1020.

Lead plaintiff has shown that he understands and accepts his responsibility as a Class Representative. Lead plaintiff has not demonstrated interests that are adverse to the Class Members. There is no conflict of interest in this action, and there is no disagreement between plaintiff's interests and those of the Class Members. Additionally, Class Counsel and lead plaintiff have vigorously prosecuted this action for more than three years.

### e) Ascertainability

Ascertainability, although "not expressly required" by Rule 23, is a threshold requirement for class certification. *Ott*, 65 F. Supp. 3d at 1064. A proposed class must be "precise, objective, [and] presently ascertainable." *See Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (9th Cir. 2012) (alteration added) (quotation marks omitted). Class members must be identifiable through "a manageable process that does not require much, if any, individual factual inquiry." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. 2014) (quoting William B. Rubenstein, 1 *Newberg on Class Actions* § 3:3 (5th ed.)). This requirement does not entail, however, that "*every* potential member … be identified at the commencement of the action." *Id.* (quotation marks omitted) (emphasis added). The Class Members here were identifiable from defendant's employment records, and thus this requirement is met.

### 2. Rule 23(b)(3)

Rule 23(b)(3) requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This analysis, in accord with Rule 23's "principal purpose" of "promot[ing] efficiency and economy of litigation," inquires into "the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963–64 (9th Cir. 2013) (quotation marks omitted). The focus of this inquiry, however, is on "*questions* common to the class"—plaintiff need not, at this threshold, "prove that the predominating question[s] will be answered in their favor." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S.

455, 459, 468 (2013) (emphasis in original).

The only individualized issues in this case are those of damages, which do not defeat certification. The common issues predominate here.

Regarding superiority, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010). Here, the administrator sent 1,555 Notice packets, showing that there are over a thousand class members who have low-value claims. Although they may be entitled to attorney's fees and costs if they prevail in an individual lawsuit, the individual claims likely are too small to justify the cost and effort of private counsel to file and prosecute individual actions. Allowing this action to proceed as a class action is the superior method of adjudicating the controversy given the number of class members and amount of damages at issue for each class member. *In re Hot Topic, Inc. Sec. Litig.*, 2014 WL 12462472, at *6 (C.D. Cal. Nov. 3, 2014).

## C. Settlement Agreement

The Court considers the factors enumerated by the Ninth Circuit as relevant in evaluating whether a settlement agreement is fair, reasonable, and adequate.

### 1. Strength of Plaintiff's case and the risk, expense, complexity, and likely duration of further litigation and maintaining class action status through trial

While the Court granted in part and denied in part both parties' cross-motions for summary judgment, several aspects of plaintiff's claims and defendant's defenses remain open questions of fact or law. Although plaintiff is confident of the strength of his case, he acknowledges that there are non-frivolous potential defenses to his claims.

The central consideration for this factor is usually the expense of litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Generally, "unless the settlement is clearly inadequate, its acceptance and approval are

**Joint Motion for Final Class/Collective Settlement Approval**     Page 10

preferable to lengthy and expensive litigation with uncertain results." *Id.*

The parties agree that if this case had not settled, they would have had to engage in significant additional discovery and to file motions for conditional certification of the FLSA Class, certification of the Rule 23 Class, likely cross-motions on summary judgment, and defendant's presumptive motions to decertify the FLSA and Rule 23 classes. These litigation steps would have been expensive, complex, and protracted. The settlement avoids these expenditures of resources for all parties and the Court and provides Settlement Class Members with "certain and prompt relief," a "significant benefit that [they] would not receive if the case proceeded." *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). That is all the more true in today's uncertain climate related to COVID-19 and its ongoing effects on the economy. This factor weights in favor of approval.

## 2. The amount offered in settlement

In considering the potential fairness of the recovery, courts often compare the total amount of recovery in a settlement to the estimated total amount of damages that the plaintiffs could recover if the case was litigated. *See, e.g., In Re Mego Fin. Corp.*, 213 F.3d 454, 459 (9th Cir. 2000). Nonetheless, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982).

The Settlement Agreement provides for a Settlement Fund of $4,111,613.94. This figure represents 100% of the potential damages available to the class and collective according to the facts alleged and plaintiff's counsel's calculations, including prejudgment interest through the date of the parties' mediation. This fund will pay the

**Joint Motion for Final Class/Collective Settlement Approval**           Page 11

costs of recovery to Class Members, attorney's fees and costs, and the costs to administer the Settlement, including giving notice to Class Members, printing and distributing checks, and printing and distributing 1099s following the tax year of the payments. After initial distribution as described in the settlement agreement, any monies remaining shall be redistributed to the Northwest Workers' Justice Project, a 501(c)(3) nonprofit organization dedicated to education and enforcement of worker rights. No distributed funds will revert to Defendant.

In addition, in response to this litigation, ABM has changed its payroll processes so that Oregon Workers' Benefit Fund assessments will no longer be deducted from employee wages for non-worked hours.

To date, no objections have been raised challenging the sufficiency of the amount offered in settlement. Given the number of class members who submitted claims and opted in to the FLSA portion of the settlement, defendant will pay out a total of $2,520,146.96, which is 61% of the gross settlement fund.[1] Considering the total recovery of the Settlement and the risks of continued litigation, the amount of recovery is fair, adequate, and reasonable.

### 3. The extent of discovery completed and the stage of the proceedings

This factor is concerned with whether "the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp.*, 213 F.3d 454, 459 (9th Cir. 2000). This case was litigated for three years. The parties engaged in significant discovery, including both formal and informal written discovery, exchanging 53,000 pages of time and pay records for over 1,500 employees as well as large amounts of

---

[1] There are an additional ten claims that were timely but incomplete, which may be cured before the final disbursement is made. If so, defendant's payout could be as high as $2,542,896.14, which is 62% of the settlement fund.

**Joint Motion for Final Class/Collective Settlement Approval**     Page 12

spreadsheet information and multiple rounds of explaining and refining calculations to reach the appropriate damage figures. The parties "carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. Oct. 8, 2014). This factor, therefore, supports approval.

### 4. The experience and views of counsel

" 'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). "This is because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.' " *Id.* (alteration omitted) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Absent fraud or collusion, courts can, "and should, rely upon the judgment of experienced counsel for the parties," when assessing a settlement's fairness and reasonableness. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013). Lead counsel is an experienced litigator. Defendant is also represented by experienced counsel. This factor supports approval.

### 5. Presence of a Government Participant

The Class Action Fairness Act provides in relevant part:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant … shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement ….
> * * *
> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).

28 U.S.C. § 1715(b), (d). Defendant provided the notices required under CAFA to the U.S. Attorney General and the state Attorneys General of Arizona, Arkansas, California, Colorado, Florida, Idaho, Indiana, Illinois, Michigan, Missouri, Nevada, North Carolina, Oregon, Pennsylvania, South Carolina, Virginia, Washington, and Wisconsin, all on or before June 15, 2020. Hosenpud Declaration at §§ 3–5 and Exhibits 1–3. That was not later than 10 days after the final proposed settlement was filed on June 5, 2020 [Dkt. 59]. More than 90 days have elapsed since notice was sent, and no Attorney General has objected to the proposed settlement. This factor therefore favors approval of the settlement.

### 6. Reaction of the Settlement Class

Of the 1,555 class members to whom notice packets were mailed, only 5 opted out, and to date, no one has objected to the settlement. 430 class members submitted complete claims, which is 28% of the class pool. Those 430 class members' claims represent 41.2% of the available claimable funds. The participation rate and payout percentage, along with the lack of any objections to the settlement, provides a strong presumption that the settlement is fair, reasonable, and adequate. *See, e.g., DIRECTV*, 221 F.R.D. at 529 ("The absence of a single objection to the proposed Settlement provides further support for final approval of the Proposed Settlement."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."). Thus, this factor weighs in favor of approval.

### 7. The absence of collusion or other conflicts of interest

Courts considering a pre–class certification settlement must examine whether the settlement was the "result of good faith, arm's-length negotiations or the result of fraud

and collusion." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258 (N.D. Cal. 2015). The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

The Settlement is the product of extensive arm's-length negotiations, with assistance from a respected third-party mediator, Teresa Wakeen, in addition to extensive negotiations afterward. Defendant has continued to dispute the claims against it and the Action was litigated for three years before the parties reached their proposed Settlement. Moreover, none of the three "subtle" signs of collusion are present here. The Settlement Class is to receive significant monetary benefits that are not disproportionately low compared to the requested attorney's fee award, and the payment of attorney's fees is not separate from class funds. The settlement agreement contains a provision that defendant will not object to plaintiff's fee petition if it seeks the Ninth Circuit–standard 25% of the settlement fund. Claimable settlement funds that are not claimed by the class/collective members will not be paid out as a part of the settlement, but once disbursed, no funds will revert to defendant. In addition, none of the guaranteed funds will revert to defendant. All residual funds go to a nonprofit as a cy pres distribution.

### D. Conclusion

For the reasons set forth above, the parties jointly move for an Order finally

approving the settlement agreement as fair, reasonable, and adequate.

Respectfully Submitted by:

                               JON M. EGAN, PC

DATED: October 26, 2020    By *s/ Jon M. Egan*
                                       Jon M. Egan, OSB No. 002467
                                       jegan@eganlegalteam.com
                                       Attorney for Plaintiff

                               LANE POWELL PC

DATED: October 26, 2020    By *s/ David G. Hosenpud* by Jon M. Egan via email permission 10/26/2020
                                       David G. Hosenpud, OSB No. 832414
                                       hosenpudd@lanepowell.com
                                       Attorneys for Defendant